## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE # 1 and JOHN DOE # 2, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 3:23-cv-00154-OAW |
| v. | ) ) | |
| EPIQ CORPORATE RESTRUCTURING, LLC, | ) ) ) | |
| Defendant. | ) | October 19, 2023 |

### PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, APPROVAL OF PLAN OF ALLOCATION, APPROVAL OF AWARD OF ATTORNEYS' FEES AND EXPENSES, AND APPROVAL OF SERVICE AWARDS FOR NAMED PLAINTIFFS, AND MEMORANDUM OF LAW IN SUPPORT THEREOF

### I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Plaintiffs,

John Doe # 1 and John Doe # 2 ("Plaintiffs"), on behalf of themselves and the

Settlement Class, hereby respectfully submit this Memorandum of Law in support of

their Motion for Final Approval of the (1) Settlement, including Service Awards; (2)

Attorneys' Fees and Litigation Expenses of Plaintiffs' Counsel; (3) Plan for Distribution of

Net Settlement Fund; and (4) Service Awards for the Named Plaintiffs.[1]

### II.    PRELIMINARY STATEMENT

---

[1] Unless otherwise defined, all capitalized terms have the same meanings as set for tin the Stipulation of Settlement ("Stipulation"), previously filed with this Court.  In addition, it should be noted that this Motion was meant to be filed no later than ten (10) days prior to the Final Approval Hearing, per the schedule contained in the Stipulation, which should have been on October 17, 2023.  Plaintiffs' counsel apologizes for the two day tardiness of this filing, which was due to conflicts in other matters. Should the Court decide that the Final Approval Hearing should be delayed two days to accommodate this filing, or any concerns thereof, there will be no objection.

The Plaintiffs have achieved an excellent resolution of this matter on behalf of all Settlement Class Members. By way of background, the Plaintiffs, in common with the other Settlement Class Members, are sexual abuse survivors who allege they were abused as children at the hands of clergy members associated with The Norwich Roman Catholic Diocesan Corporation ["Diocese"] and who filed claims for compensation, through their counsel, Kelly E. Reardon, Esq. of The Reardon Law Firm, P.C., in the Diocese's Chapter 11 Bankruptcy [hereinafter "Bankruptcy"] pending in the United States Bankruptcy Court, District of Connecticut, 21-20687 (JJT).

On or about February 2, 2023, their names and addresses were publicly disclosed by employees of the Defendant, Epiq, in an Affidavit of Service, despite a Court Order in the Bankruptcy that required any filings that included information about sexual abuse claimants to be kept confidential. The disclosures were made on various platforms, including a case website set up for public viewing. These names and addresses were publicly available for a period of approximately 21 hours before they were removed from view.

The Plaintiffs filed a Complaint, on behalf of themselves and the other sexual abuse claimants whose names were disclosed in the service list, for damages due to the physical, psychological and economic harm they allege they endured due to that disclosure. The Complaint included causes of action for negligence, gross negligence, recklessness, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of fiduciary duty, invasion of privacy and violation of the Connecticut Unfair Trade Practices Act. Epiq denies the Plaintiffs' allegations.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

2

The Settlement of this action will resolve the claims of all Settlement Class Members – persons who filed proofs of claim in the Bankruptcy asserting claims against the Diocese for sexual abuse whose names were disclosed in the Affidavit of Service – in exchange for a cash payment of $50,000 to each Settlement Class Member, less Attorneys' Fees and Litigation Expenses approved by the Court.  In addition, subject to Court approval, Epiq has agreed to pay Service Awards to John Doe # 1 and John Doe # 2 up to $75,000 each.

The Settlement was reached through extensive work and litigation, extensive investigation on the part of Plaintiffs' Counsel, including interviews, depositions, production of documents and review of documents, retention of experts, research and strategy discussions.  Motions were filed and briefed, opposing motions were filed and briefed on a number of topics, and the strengths and weaknesses of the case were fully evaluated.  Plaintiffs' Counsel has extensive experience in handling class action and sexual abuse cases.

Negotiations were overseen by a federal Magistrate Judge.  A mediation occurred with Hon. William I. Garfinkel, Recalled United States Magistrate Judge for the District of Connecticut, on July 13, 2023.  Plaintiffs' Counsel, Plaintiffs, counsel for numerous Settlement Class Members, Epiq's Counsel, representatives of insurers for Epiq, and other interested parties were present.  The negotiations took nearly nine (9) hours before agreement was reached on the terms of a proposed resolution of the case.

Since the mediation, the parties worked diligently to prepare a Stipulation memorializing the Settlement, which was filed on August 10, 2023 (No. 54), and held

numerous conferences with the Court to ensure that its terms, the Notice provided to Settlement Class Members and the Claims process were fair, reasonable and adequate.

On August 31, 2023, after extensive discussions and consideration, the Court granted the Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement (No. 62), approved the Notice and Claim Form and authorized them to be sent out to Settlement Class Members. By September 14, 2023, the Plaintiffs filed a Declaration/Notice confirming mailing of Notices and Claim forms to Settlement Class Members (No. 67). At of the date of this filing, 129 Settlement Class Members have been identified, 128 of them have returned completed Claim Forms and one has not been located despite vigorous and extensive efforts on the part of numerous attorneys and private investigators. As a result, one of the 129 Settlement Class Members has not returned a Claim Form and all others have submitted Claim Forms and agreed to participate in the Settlement. This provides substantial evidence that the Settlement Class Members are in agreement that the terms and amount of the settlement are fair, adequate and reasonable.

The Plaintiffs also request that the Court approve the distribution plan, which was included in the Stipulation and Notice. The Plan governs how claims will be paid and distributed to the Settlement Class Members. It is fair, reasonable and adequate and should be approved.

Plaintiffs' Counsel also respectfully applies for an award of Attorneys' Fees in the amount of $140,712.50 and Litigation Expenses in the amount of $11,832.56. Plaintiffs' Counsel's fee request, approved by the Plaintiffs, is within the range of fees awarded in class actions around the country and constitutes just over 2% of the total settlement

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

amount of $6,450,000 ($50,000 for each of the 129 Settlement Class Members) (not including the $150,000 in Service Awards requested to be paid to the Named Plaintiffs). This amount is reasonable and low when considering the outstanding result achieved here, the fact of complete participation of all Settlement Class Members and the fact that Plaintiffs' Counsel spent considerable time and effort to bring and resolve this case in a timely and efficient manner. *See Declaration of Plaintiffs' Counsel, filed simultaneously on this date.*

### III.   THE NOTICE OF PROPOSED SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS AND IS REASONABLE

Rule 23(e) requires that a class action shall not be dismissed or compromised without the approval of the Court and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the Court directs.  As stated in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974), the Rule requires "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts."  The notice must fairly apprise the class members of the terms of the proposed settlement and options that are open to them if they object or otherwise decide to opt-out.  *Id.*

Here, in accordance with the Preliminary Approval Order, Notices and Claim Forms were sent out by mail (or other means to ensure receipt) to all identified Settlement Class Members (129 in total).  *See Declaration of Plaintiffs' Counsel (No. 67).*  Notice was received by 128 of 129 Settlement Class Members.  One has not yet been located despite extensive efforts by two attorneys, family members and private investigators.  Efforts to locate that individual are ongoing.  Completed Claim Forms were signed and returned by 128 of 129 Settlement Class Members, demonstrating that

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

all of them received proper, adequate, understandable notice and voluntarily agreed to

participate in the Settlement.  These procedures satisfy the requirements of Rule

23(c)(2).  *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1032-33 (N.D.

Ill. 2000) ("The purpose of class notice . . . is to advise [settlement class members] of

the terms of the agreement which has been reached and provide those who disapprove

of those terms an opportunity to object or opt out.").

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### a.  Settlements Are Generally Favored and Encouraged

The Federal Rules of Civil Procedure provide that the Court should approve a

class action settlement if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ.

P. 23(e)(2).  The Second Circuit has recognized the "strong judicial policy in favor of

settlements, particularly in the class action context." *Kennedy v. Whitely*, No. 3:16-cv-

02010, 2021 WL 4533198, at 3 (D. Conn. April 16, 2021) (quoting *Wal-Mart Stores, Inc*

*v. Visa USA, Inc,* 396 F.3d 96, 116-17 (2d Cir. 2005)).

The evaluation of a proposed settlement requires that the Court consider the

terms of the settlement and the negotiating process, and a general policy favoring

settlement exists in class actions.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F. 3d

96, 114 (2d Cir. 2005).  The Second Circuit has held that a settlement analysis should

not serve as a "rubber stamp approval," but need not involve the same detailed and

thorough analysis that would occur if trying the case.  *Detroit v. Grinnell Corp.*, 495 F.2d

448, 462 (2d Cir. 1974).

### b.  The Settlement Is Presumptively Fair

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart*, 396 F.3d at 116.  Weight is given to the recommendation of counsel involved in the litigation.  A court may find the negotiations fair where, as has occurred in this case, there was no collusion in the negotiations and Plaintiffs' counsel possessed the experience and ability to represent the interests of the Settlement Class. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

Both adequate representation and arm's-length negotiation are present here, satisfying the procedural inquiry.  Plaintiffs and Plaintiffs' Counsel have adequately represented the Settlement Class during both the litigation of this action and its settlement.  There is no dispute as to these elements. Plaintiffs' Counsel are experienced in class actions and sexual abuse cases, and have vigorously advanced this case through depositions, research, motion practice, negotiations and other efforts. The Plaintiffs have involved themselves in all aspects of the case, have been deposed and have taken their roles seriously.   The presumption of fairness and adequacy is present here and not contradicted by the evidence and process of this case.  The discovery conducted and negotiations have been detailed in this Motion and prior filings, demonstrating the manner in which Plaintiffs and Plaintiffs' counsel have vigorously worked to advance this case and settle it in a fair and adequate manner on behalf of all Settlement Class Members.  The Settlement is entitled to a presumption of fairness by this Court according to the Second Circuit standards.

### c.  The Settlement Meets All Requirements For Approval

The Settlement satisfies all nine requirements laid out by the Second Circuit in *Grinnell*, 495 F.2d at 463. They are: (1) the complexity, expense and likely duration of litigation, (2) the reaction of the class to the settlement, (3) the stage of proceedings and amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class through trial, (7) the ability of the defendant to withstand a greater judgment, (8) the range of reasonableness of the settlement in light of the best possible recovery and (9) the range of reasonableness of the settlement to a possible recovery in light of all of the attendant risks of litigation.

In addition, the factors set forth in amendments to Rule 23(c), which overlap with those in *Grinnell*, also favor final approval. They are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length, (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims, (iii) the terms of any proposed award of attorney's fees including timing of payment and (iv) any agreement required to be identified under Rule 23(e)(3), which there are none in this case, as well as (D) the proposal treats class members equitably relative to each other.

Here, all factors are met. Regarding the *Grinnell* factors:

**1)    Complexity, Expense and Duration of Litigation:** Had this case not settled, the litigation would be anticipated to be lengthy, complex and costly, which would be detrimental to the Plaintiffs, and the Settlement Class. *See In re Advanced Battery Techs., Inc., Sec. Litig.,* 298 F.R.D. 171, 175 (S.D.N.Y. 2014) (which stands for

the proposition that the complexity, expense and likely duration of the case are critical factors in evaluating whether the settlement is reasonable). Here, there were numerous anticipated challenges with regard to proving liability, causation and damages, which would have required extensive discovery and expert testimony and expense, and likely would have lasted for years, resulting in an uncertain recovery. One of the biggest anticipated challenges was that the Defendant intended to contest class certification, and would have likely sought the depositions of numerous potential class members, as well as sought discovery on their claimed damages and whether they were caused by the disclosure at issue or some other life event, including the molestation they experienced as children. There would have been significant expenditures of time and resources, as well as cost associated with expert retention and testimony. It is highly likely that the case could have continued for years and that recovery would be the same or less (based on additional expenses for litigation). *See Brazillian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003). This settlement realizes an excellent recovery for each Settlement Class member in an efficient manner and without risk.

   **2)   The Reaction of the Class to the Settlement:** This factor also supports approval of the Settlement. As described, there are 129 Settlement Class Members and 128 were located and returned completed Claim Forms, thereby attesting to their support of the Settlement and agreement to participate in it. Only one could not be located at this time. The support was overwhelmingly positive. To date, only two individuals have inquired as to whether they should be included in the Settlement Class, and they have been informed that their names were not disclosed and they do not meet

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

the criteria for inclusion. Any objections, if they are raised, may be addressed at the final

hearing. There have been no objections as of this date. The case law overwhelmingly

concludes that absence of objections may be taken as evidence of fairness. *In re*

*PaineWebber Ltd.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd,* 117 F.3d 721 (2d Cir.

1997).

　　　3)　　**Stage of Proceedings and Discovery Completed:** Here, as has been

described, substantial discovery has been completed, as well as research and retention

of an expert witness regarding causation and damages. The Plaintiffs, and Plaintiffs'

Counsel, are well versed in the strengths and weaknesses of their claims and have

spent considerable time evaluating the merits and likely recovery. *In re Bear Stearns*

*Cos., Inc.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). They have sufficient information

to make informed decisions about the adequacy of the Settlement and note that it is an

exceptional recovery for each Settlement Class Member in light of the circumstances

and values in similar disclosure cases. Accordingly, they have developed an

understanding of the case to the extent that they recognize the reasonableness of the

Settlement.

　　　4)　　**Risks of Establishing Liability:** In this case, although some evidence

was obtained early on that would have been helpful in establishing liability of the

Defendant, there would have been a long road ahead, and many risks, in terms of

determining and proving the true extent of liability. *See Grinnell*, 495 F.2d at 463.

Specifically, there were challenges raised early on by way of Motion to Dismiss that

would have needed to be litigated regarding whether the Defendant could in fact be held

liable for its conduct because of the contract it entered into with the Norwich Roman

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

10

Catholic Diocesan Corporation in the underlying bankruptcy.  There was a substantial risk that, if the contract was held to be enforceable and binding on the Plaintiffs in this case, they would not be permitted to pursue any recovery at all.  Thus, the Settlement was, and is, a safe, fair, and substantial recovery for the Settlement Class that avoided the risks of proving liability and the great risk of dismissal of the action.

 **5) Risks of Establishing Damages:** The Plaintiffs faced substantial risks in providing damages as well, particularly in light of the fact that they, and the Settlement Class Members, were all survivors of childhood sexual abuse and it would be argued that their underlying abuse, and not the disclosure of their identities, was the most significant cause of any claimed damages.  Proof of damages is a complex matter and could have required depositions of multiple claimants and their mental health providers, as well as retained experts.  As such, it would have been extremely difficult to quantify and prove that the damages the Plaintiffs suffered were caused by the disclosure itself, as well as the amount of damages that would be sufficient to compensate them.  These risks favor final approval.

 **6) Risks of Maintaining the Class through Trial:** There can be no question that this risk was substantial, particularly in that the Defendant indicated that it intended to object to class certification on the basis that the claims of the Plaintiffs and the potential class members were not substantially similar, as well as other factors.  The Settlement eliminates any such arguments and allows for all Settlement Class Members who experienced the same harm to be treated equitably.

 **7) Defendant's Ability to Withstand a Greater Judgment:** The ability of the Defendant to pay a substantial judgment involving damages claimed for 129 individuals

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

is highly uncertain and would be relevant to the fairness of the Settlement reached. *Grinnell*, 495 F.2d at 463.  Here, it is possible, but unknown, whether the Defendant could pay a greater judgment, but that must not be dispositive of whether this Settlement is fair because all of the factors for final approval have been satisfied.

8) **Reasonableness of Settlement in Light of Best Possible Recovery and Risks of Litigation:** The last two factors in *Grinnell* are encompassed in this section and are met in this Settlement.  The amount offered and agreed upon after extensive arm's length negotiations is exceptional given the risks of the case, its strengths and weaknesses.  The Settlement falls within the "range of reasonableness" that the Court should consider.  *PaineWebber*, 171 F.R.D. at 130.  The Settlement also provides for payment to the Settlement Class Members in an efficient and immediate manner, rather than 129 individuals having to wait and struggle through what could be years of litigation with an uncertain result. The Settlement represents an exceptional recovery for all that is secure and reasonable. Thus, all *Grinnell* factors have been met, favoring approval of the Settlement.

In addition, regarding the Amended Rule 23(e)(2) requirements, those have also been met.  As explained throughout this Memorandum and prior filings, the Plaintiffs and Plaintiffs' Counsel have adequately and vigorously represented class members.  They have worked together to ensure that all of the individuals harmed by this disclosure are protected and that their interests are considered.  They have done so through arm's length negotiations involving a Federal Magistrate Judge and multiple representatives that were present to ensure their views and concerns were addressed. The relief provided here is adequate taking into account the likely costs, risks and

delays of litigation, as discussed above. The proposed method of distribution is fair and reasonable in that it treats Settlement Class Members equitably and insures prompt payment. As will be explained, Plaintiffs' Counsel's request for attorneys' fees and expenses is reasonable and meets the factors set forth in the relevant case law. As a result, the Settlement should be approved.

## V.    THE PLAN OF ALLOCATION OR DISTRIBUTION SHOULD ALSO BE APPROVED AS IT IS FAIR AND REASONABLE

If the Court approves the Settlement, it will be distributed to the Settlement Class in accordance with the terms of the Stipulation and the Notice sent to Settlement Class Members. In evaluating a plan for allocating settlement funds in a class action, the Court must consider whether counsel has properly assessed the merits of the claims and whether the proposed apportionment is fair and reasonable. *PaineWebber*, 171 F.R.D. at 133. Experienced counsel's opinion carries weight. The allocation plan must have a reasonable basis, as it does here.

Here, as the Stipulation lays out, the Defendant will pay into an Escrow Account a sum of $50,000 per Settlement Class Member who submitted a timely Claim Form. In addition, the Defendant will pay to each named Plaintiff a Service Award of $75,000 each for their role as named Plaintiffs. Plaintiffs' Counsel will then deduct from the Settlement Fund any Court awarded Attorneys' Fees and Litigation Expenses. The Net Settlement Fund, what remains, will be distributed ratably to Settlement Class Members in a prompt fashion. No objections to this manner of allocation have been filed by any Settlement Class Members or the attorneys that represent them in the underlying Bankruptcy. Thus, these factors favor approval.

## VI.    AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

Plaintiffs' Counsel also respectfully requests that this Court award its reasonable Attorneys' Fees and Litigation Expenses incurred in prosecuting this case. Our Courts have held that a litigant or attorney who recovers a settlement or common fund for the benefit of multiple litigants or claimants is entitled to a reasonable attorney's fee from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This concept is well established and supported by the case law because actions like this one could not be sustained if plaintiffs' counsel were not willing to take the risks of litigation in anticipation of a reasonable renumeration for their efforts on behalf of all claimants. *Fresno City Emps.' Ret. Ass'n v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 68 (2d Cir. 2019).

In this case, Plaintiffs' Counsel seeks an award based on actual time spent and anticipated to be spent (to finalize the Settlement and reach a conclusion of this case), multiplied by a reasonable hourly rate normally charged for the attorneys, paralegals and staff who actually worked on the case and documented their time accordingly. Plaintiffs' Counsel is seeking the exact amount of fees and is not seeking any percentage of the total Settlement or any lodestar enhancement or multiplier, as is permitted in this Circuit. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2000).

Plaintiffs' Counsel is prepared to submit time records documenting the amount of time each employee, including attorneys, paralegals and staff, spent on this case and are anticipated to spend to bring the case to conclusion, should the Court desire to review them. They will be brought to the Final Approval Hearing for review if necessary and may be entered as an exhibit if the Court desires. The total number of hours Plaintiffs' Counsel has spent thus far on this case is 320. The rates charged by Plaintiffs' Counsel and sought are as follows: (1) Paralegals, $150/hour; (2) Staff (Office

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

14

Administrator/Finance Specialist), $150/hour; (3) Attorneys, $550/hour for court time and $400/hour for office time; and (4) Senior Attorney, Robert I. Reardon, Jr., $750/hour for court time and $650/hour for office time. These rates are reasonable, as is the time spent on this matter and the total amount of Attorney's Fees requested, $140,712.50, which amounts to 2% of the total settlement.

There are numerous cases in this District in which comparable hourly rates have been considered reasonable. In the case of *In re Jackson* (attached hereto as only a Slip Copy is available), the Bankruptcy Court in this District considered hourly rates and cited cases in which $695 per hour, $500 per hour and $400 per hour were reasonable for Connecticut attorneys. In that case, the Court concluded that $500 per hour was reasonable. Similarly, in *O'Connor v. AR Resources, Inc.*, 2012 WL 12743 (D.Conn. Jan. 4, 2012), a case decided more than ten years ago, the Court held that reasonable hourly rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Id.* at *8 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984). As the Court detailed in *Jackson*, attached, rates in the range of nearly $700 down to $400 an hour for Connecticut attorneys are well within the range of reasonableness. It should be noted that, to the extent that Attorney Robert I. Reardon, Jr., charges $750/hour for court time and $650/hour for office time, he has been in practice for 53 years, is highly skilled and qualified and his decades of expertise should be taken into consideration in terms of his reasonable hourly rate.

Attorney's fees in class action/common fund cases such as this one may be based on a percentage of the total settlement, but may also be based on actual time spent multiplied by a reasonable hourly rate. Here, the total requested by Plaintiffs'

Counsel amounts to both a reasonable percentage of the total settlement and a reasonable sum based on hours worked and the claimed hourly rate. *See Goldberger*, F.3d at 48-50. On a percentage-of-the-fund basis, the total sought is very low as compared to other similar cases, in which counsel typically seeks up to one-third (33%) of the total fund, and is an eminently reasonable sum to compensate Plaintiffs' Counsel, who is highly experienced and has devoted hundreds of hours to this case, for the work done. *See Blum v. Stenson,* 465 U.S. 886 (1984). In addition, the Plaintiffs in this case wholly support this request for fees and consider it reasonable and warranted given the work performed. It is well below the range permitted in other cases by other courts in the Second Circuit. *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002). Because no lodestar enhancement is being sought here (an adjustment permitted in our courts to reflect such factors as the risk and contingent nature of the litigation and results obtained), there is no need for a lodestar calculation. Rather, the fees sought are well under the range typically sought.

Should the Court consider the *Goldberg* factors, as has been done in the Second Circuit, these also demonstrate that the fee requested is reasonable and appropriate. The factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risks of the litigation . . .; (4) the quality of the representation; (5) the requested fee in relation to the settlement, and (6) public policy concerns. *Id.* at 50. These factors support approval.

The work performed was substantial. Since the lawsuit was prepared and filed, multiple motions, objections, declarations and other court documents have been prepared, edited and filed. Plaintiffs' Counsel prepared and disclosed answers to

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

interrogatories and requests for production, attended depositions, met with clients, retained and conferred with an expert witness, prepared for and held a mediation, prepared multiple complex documents regarding the settlement, administered the settlement and claim forms, ensured the confidentiality and protection of the identities of all members of the Settlement Class, worked with other attorneys to ensure the case and settlement progressed quickly and efficiently and handled all of the complex legal issues encountered with expertise. To date, 320 hours have been spent prosecuting this case. It is anticipated that an additional 30 hours will be necessary to finalize the settlement (including one attorney, a paralegal and a financial administrator).

The litigation is complex and was a risky endeavor, which could have resulted in no recovery or little recovery at all. Many complex legal issues were faced and had to be briefed and argued. Defense counsel was highly capable and raised legitimate defenses that had to be overcome in order to achieve a settlement. The representation was high quality and Plaintiffs' Counsel is known in the field of personal injury, sexual abuse and class action litigation in the State of Connecticut and throughout the Northeast as a skillful firm with substantial expertise and experience. The amount of the settlement and the efficiency with which Plaintiffs' Counsel achieved it are a testament to that, as is the very small percentage of the total settlement that counsel requests here. It should finally be noted that no Settlement Class Member has raised any objection to a claim for attorney's fees by Plaintiffs' Counsel, which was discussed in the Notice sent out to all 129. Any objections to this specific filing can be addressed at the Final Approval Hearing, if they are raised. Thus, Plaintiffs' Counsel respectfully requests that the Court award its reasonable attorney's fees.

In addition, Plaintiffs' Counsel request reimbursement for litigation expenses, which are reasonable and were necessary to effectuate the case and settlement, in the amount of $11,832.56. These costs are itemized in Plaintiffs' Counsel's Declaration, filed simultaneously. They include court filing costs, marshal service fees, research expenses, retention and use of an expert witness, deposition transcripts, fees for postage and mailings, and other small miscellaneous expenses. The Notice to the Settlement Class made clear that Plaintiffs' Counsel would seek reimbursement of expenses, and no one has objected to this request to date. They are permitted in this Circuit and are well within the range of those allowed in this type of case and, in fact, are exceptionally low given the work done. As a result, Plaintiffs' Counsel requests that they be awarded.

## VII.   THE NAMED PLAINTIFFS' SERVICE AWARDS SHOULD BE GRANTED AS THEY ARE REASONBLE

The Named Plaintiffs, John Doe # 1 and John Doe # 2, also request Service Awards in addition to their $50,000 settlements, of $75,000 each for the work they performed in this case. These sums are reasonable and permitted by the Court. *See e.g., In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04 Civ 8141 (DAB), 2010 WL 5060697 (S.D.N.Y. Dec. 2, 2010). The awards of $75,000 each are meant to compensate the Lead Plaintiffs for their time, effort, and commitment to this case. Each spent many hours in deposition, coordinating with Plaintiffs' Counsel about this case, providing feedback and input, attending the mediation and consulting about issues that arose. Each devoted time from their busy schedules and missed work and other family

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

18

commitments due to this case. As such, the modest Service Awards requested would be appropriate to compensate them in this case and are respectfully requested.

## VIII.   CONCLUSION

For the foregoing reasons, and based on the entire record before this Court, the Plaintiffs respectfully request that the Court grant final approval of this Settlement and distribution plan, as well as award the attorney's fees and expenses requested and the Service Awards sought.

THE PLAINTIFFS,

By: _____

Kelly E. Reardon (ct28441)
**THE REARDON LAW FIRM, P.C.**
160 Hempstead Street
P.O. Drawer 1430
New London, CT 06320
Phone:  860-442-0444
Fax:  860-444-6445
Email:  kreardon@reardonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on October 19, 2023, I caused the foregoing motion to be filed with the Court's electronic case filing system (ECF), which will provide notice of its filing electronically to all counsel of record in this action.

THE PLAINTIFFS,

By: _____

Kelly E. Reardon (ct28441)
**THE REARDON LAW FIRM, P.C.**
160 Hempstead Street
P.O. Drawer 1430
New London, CT 06320
Phone:  860-442-0444
Fax:  860-444-6445
Email:  kreardon@reardonlaw.com

**THE REARDON LAW FIRM, P.C.**
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

20

In re Jackson, Slip Copy (2023)

2023 WL 2202738
Only the Westlaw citation is currently available.
United States Bankruptcy Court, D. Connecticut,
New Haven Division.

IN RE: Curtis James JACKSON, III, Debtor
Curtis James Jackson, III, Plaintiff
v.
GSO Business Management, LLC, Jonathan
Schwartz, Michael Oppenheim, Bernard Gudvi,
Nicholas Brown, and William Braunstein, Defendants

CASE NO.: 15-21233 (AMN)
|
Adv. Proc. No. 17-2068
|
Signed February 23, 2023

**Attorneys and Law Firms**

Imran H. Ansari, Joseph P. Baratta, Baratta, Baratta & Aidala,
LLP, New York, NY, James Berman, Christopher H. Blau,
John L. Cesaroni, Zeisler & Zeisler, P.C., Bridgeport, CT, for
Plaintiff Curtis James Jackson, III.

Ilan Markus, Barclay Damon LLP, New Haven, CT, for
Defendant GSO Business Management LLC.

AP-ECF Nos. 371, 379, 389, 390

**MEMORANDUM OF DECISION AND
ORDER DETERMINING AWARD
OF ATTORNEY'S FEES AND COSTS**

Ann M. Nevins, Chief United States Bankruptcy Judge

**\*1** Before the court is the determination of the amount
of attorney's fees and costs to be awarded to the plaintiff,
Curtis James Jackson, III ("Mr. Jackson") and payable by
the defendant, GSO Business Management, LLC ("GSO")
as it relates to the judgment entered against GSO. The
court assumes the parties' familiarity with the procedural
history of this case including the history recited in the court's
Memorandum of Decision and Order After Trial issued on
August 29, 2022, (the "Decision"). AP-ECF No. 371. The

court employs the same defined terms in this Order as used
in the Decision.

In the Decision, the court entered judgment in favor of Mr.
Jackson as to the Bankruptcy Related Fee Claim, but in
favor of GSO as to the $90,000 Monthly Fee Claim and
the ⬜ IRC § 1398 Claim. AP-ECF No. 371. In relation to
the Bankruptcy Related Fee Claim, the court ordered GSO
to disgorge $88,692.51, plus post-judgment interest, on or
before September 30, 2022, for its knowing and unauthorized
withdrawal of funds from Mr. Jackson's DIP account in
violation of the Retention Order. AP-ECF No. 371, p. 47.
In addition to disgorgement, the court awarded Mr. Jackson
attorney's fees and costs related to the Bankruptcy Related
Fee Claim in an amount to be determined. AP-ECF No. 371,
p. 61-62. On September 29, 2022, GSO remitted $88,945.61
to Mr. Jackson representing the disgorgement of $88,692.51,
plus $253.10 in post-judgment interest. AP-ECF No. 379.
After Mr. Jackson's submissions supporting an award of
attorney's fees and costs and GSO objections, the court heard
argument on that supplemental issue on February 7, 2023. AP-
ECF No. 396.

### *Mr. Jackson's Attorney Fee Request*

Mr. Jackson seeks an award of $236,565.00 of attorney's fees
and $4,148.47 of costs, totaling $240,713.47. To support this
request, Mr. Jackson submitted a statement detailing the time
incurred by Mr. Jackson's counsel - Joseph P. Baratta and
Imran H. Ansari - in prosecuting this adversary proceeding
from September 10, 2017, through August 29, 2022, (the
"Statement"). AP-ECF Nos. 389-1, 389-2 [1]. Notably, the
Statement is not an invoice of attorney's fees and costs billed
to Mr. Jackson, but rather, a cultivated list of time entries
specifically sought as part of this award. The Statement did
not include any time incurred by any paralegal staff, time or
expenses incurred related to expert depositions related to the
⬜ IRC § 1398 claim, or local counsel's fees. AP-ECF No.
389-1.

**\*2** The Statement reflects attorney's fees totaling
$394,275.00. AP-ECF No. 389-1, p. 14. The attorney's fees
of $394,275.00 are broken down between Attorneys Baratta
and Ansari in the following chart.

| Attorney | Number of Hours | Rate | Attorney's Fees |
|---|---|---|---|

| Ansari | 346.8 | $750.00 | $ 260,100.00 |
| Baratta | 178.9 | $750.00 | $ 134,175.00 |
| *Total* | *525.7* | ---------- | *$ 394,275.00* |

Because the court limited any award to the fees related to the Bankruptcy Related Fee Claim, Mr. Jackson asserts sixty (60%) percent of the $394,275, or $236,565, should be awarded as attorney's fees. Mr. Jackson asserts sixty (60%) percent represents a rough estimation of the amount of time incurred prosecuting the Bankruptcy Related Fee Claim. AP-ECF No. 389, p. 6. During the February 7th hearing, Attorney Ansari expanded on the rationale for the estimate, noting the adversary proceeding originally consisted of two claims, the IRC § 1398 Claim and the $90,000 Monthly Fee Claim, and the time incurred on the unsuccessful $90,000 Monthly Fee Claim ultimately brought to light and attributed to the Bankruptcy Related Fee Claim. AP-ECF No. 396, p. 10, L. 2-15, p. 12-13.

The Statement reflects costs for this adversary proceeding totaled $15,214.13. However, approximately $8,300 is attributable to expert discovery related specifically to the IRC § 1398 claim, leaving $6,914.13 for expenses generally. From this amount, Mr. Jackson seeks sixty (60%) percent equaling $4,148.47 as an award of costs.

Mr. Jackson asserts his counsel's $750 per hour rate[2] is reasonable and customary for partner rates in New York City, especially in the bankruptcy context. AP-ECF No. 389, p. 6. During the hearing, Attorney Ansari posited the $750 hourly rate would be reasonable in the Second Circuit generally. AP-ECF No. 396, p. 14, L. 4-13. Mr. Jackson cited the following cases as support for reasonableness of the $750 hourly rate:

- *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946 (S.D.N.Y. May 30, 2013)(court approved a class action settlement involving Nissan vehicles that included a $1,620,000 attorney's fee award. The court concluded hourly rates ranging from $795 (partner) to $650 (associate) fell within the prevailing market rates for class counsel offering similar services);

- *In re Telik, Inc. Sec. Litig.,* 576 F.Supp. 2d 570, 589 (S.D.N.Y. 2008)(court noted, "[p]erhaps the best indicator of the "market rate" in the New York area

for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that defend class actions" and concluding rates ranging from $700 to $750 per hour fell within the norm of the rates charged by those attorneys' common adversaries in the defense bar.); and

- *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764 (S.D.N.Y. November 18, 2013)(court found $750 per hour for partners and $500 per hour for senior associates reasonable for class counsel in a class action based upon violations of the Fair Labor Standards Act and New York Labor Law).

AP-ECF No. 389.

All of these cases deal with attorney rates for complex, specialized class action litigation in the Southern District of New York. Two of the decisions are nearly a decade old, and none deal with bankruptcy-related claims.

**\*3** In additional support of the rate, Mr. Jackson directed the court to an article published on July 28, 2022, by The American Lawyer entitled "As Billing Rates Skyrocket, Historic Fee Leaders Find Company at $2,000 per Hour." AP-ECF No. 389. The article discussed how the nation's top four bankruptcy firms charge, on average, $1,838 per hour for top level partners involved in complex, large scale Chapter 11 bankruptcy cases. AP-ECF No. 389.

When questioned about the rate during the hearing held on February 7, 2023, Attorney Ansari maintained the rate was reasonable because a client can choose their counsel.

> Court: What is the evidence of the going rate for attorneys pursuing this type of a claim in the District of Connecticut?
>
> Ansari: Your Honor, well I'm not prepared to answer that question right now.
>
> ...

Court: Why should I consider the going rate in any district other than Connecticut?

Ansari: Your Honor, I would -- a litigant has their choice of counsel.

...

Ansari: Well, Your Honor, we had an agreement with Curtis J. Jackson in terms of our representation on our fees.

AP-ECF No. 386, p. 5, L. 18-22, p. 6, L. 1-4.

The Statement reflects numerous instances of Attorneys Baratta and Ansari incurring time for the same task. Mr. Jackson contended the work of two attorneys was reasonable and necessary to counter GSO's extensive defense to Mr. Jackson's claims. Mr. Jackson also notes GSO employed two firms (lead counsel - Freeman, Mathis & Gary, LLP, and local counsel, Barclay Damon, LLP) to defend its interests. AP-ECF No. 389, p. 5.

### GSO's Objection

GSO objected to the requested fees and costs on a number of grounds including: 1) the sixty (60%) percent allocation is arbitrary and not tailored to actual time spent on the Bankruptcy Related Fee Claim; 2) the hourly rate of $750 is unreasonable and not customary for hourly rates charged in this District for similar services; and 3) the time records contain excessive and redundant billing by two attorneys and/or vague entries warranting an across-the-board reduction. AP-ECF No. 379.

GSO asserted the focus of this adversary proceeding was not the Bankruptcy Related Fee Claim but rather the IRC § 1398 Claim. AP-ECF No. 390. During the hearing, GSO's counsel argued allocating sixty (60%) percent of the fees to the $90,000 Monthly Fee Claim, and hence, the Bankruptcy Related Claim, was not grounded in a division of the actual time spent and would result in an award compensating for time spent on the unsuccessful $90,000 Monthly Fee Claim. AP-ECF No. 396, p. 18-19.

GSO objected to the hourly rate of $750 asserting it does not fall within the prevailing market rates. AP-ECF No. 390, p. 6-7. In support of its objection, GSO submitted an affidavit from its local counsel, Attorney Ilan Markus, attesting a rate

of $425 per hour is reasonable for this District. AP-ECF No. 381.

Lastly, GSO argued the amount of attorney's fees sought should be significantly reduced due to an excessive number of vague entries lacking in specificity. As part of this argument, GSO noted the Statement is rife with examples of Attorneys Ansari and Baratta doubling billing for the same work. AP-ECF No. 390, p. 6-7. Additionally, GSO filed a declaration from its lead counsel, Attorney Thomas McCraw, attesting to Attorney Baratta's and Ansari's inflation of time incurred for depositions compared to his own time spent. AP-ECF No. 380.

### APPLICABLE LAW

#### The Presumptively Reasonable Fee Approach

As noted in the Decision, the court exercises its authority pursuant to Bankruptcy Code § 105(a) to award the Plaintiff attorney's fees and costs to enforce the provisions of Bankruptcy Code § 330 and Fed.R.Bankr.P. 2016. AP-ECF No. 371, p. 48. In exercising its considerable discretion to fashion an award, the court will consider what is reasonable. "In the Second Circuit, attorney's fees awards are calculated based on the 'presumptively reasonable fee' approach." *McGaffigan v. City of Rochester*, 21-CV-6545-FPG, 2023 WL 415098, at *1 (W.D.N.Y. Jan. 26, 2023). Under this approach, a court "determines attorneys' fees by 'setting a reasonable hourly rate, taking account of all case-specific variables' and multiplying that rate by the number of hours expended." *Wachovia Mortg., FSB v. Toczek*, 841 Fed. Appx. 267, 269 (2d Cir. 2021)(summary order)(citing, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008)).

#### The Reasonable Hourly Rate and The Forum Presumption

**\*4**  A reasonable hourly rate is generally "the rate a paying client would be willing to pay," bearing in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. "In assessing a reasonable hourly rate, the court takes into consideration the market rate prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Bozdogan v. 23 Ludlam Fuel, Inc.*, 16-CV-1053 (JMW), 2022 WL 17987044, at *3 (E.D.N.Y. Dec. 29, 2022)(internal citations omitted). The relevant community is the district in which the reviewing court sits. This is known as the "forum rule." *See,* ⚑ *Simmons v. NYC Transit Auth.*, 575 F.3d 170, 174-75 (2d Cir. 2009). "The party applying for fees must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates." *Gesualdi v. Bestech Transp., LLC,* No. 14-CV-1110(JS)(ARL), 2022 WL 866853, at *2 (E.D.N.Y. Mar. 23, 2022)(internal quotations omitted). [3] A "court may determine the reasonable hourly rate by relying both on its own knowledge of comparable rates charged by lawyers in the district" and "on evidence proffered by the parties." *Congregation Rabbinical College of Tartikov, Inc.,* 188 F. Supp. 3d at 338 (internal citations omitted).

The Second Circuit Court of Appeals noted a court may apply out-of-district rates if it was clear that a reasonable, paying client would have paid those higher rates.

[A] district court may use an out-of-district hourly rate — or some rate in between the out-of-district rate sought and the rates charged by local attorneys — in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates. We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally. This presumption may be rebutted — albeit only in the unusual case — if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances.

⚑ *Arbor Hill,* 522 F.3d at 191.

Courts in this District have assessed fees using out-of-district rates when called for by the circumstances of the particular case. *See, Horror Inc. v. Miller,* 3:16-CV-1442 (SRU), 2022 WL 4473426, at *5 (D. Conn. Sept. 26, 2022)(District Court of Connecticut assessing Southern District of New York rates because counsel was a member of that Bar, the vast majority of copyright litigation in this Circuit is conducted that District, and most clients litigating complex copyright matters hire counsel from that District).

A court may adjust the base hourly rates to account for a variety of case-specific factors, including:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the level of skill required to perform the legal service properly;

(4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the attorney's customary hourly rate;

(6) whether the fee is fixed or contingent;

(7) the time limitations imposed by the client or the circumstances;

(8) the amount involved in the case and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

⚑ *Lilly v. City of New York,* 934 F.3d 222, 228 (2d Cir. 2019)(noting the *Johnson* factors derived from the case, ⚑ *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)).

### *The Reasonable Number of Hours Spent*

**\*5** When evaluating hours spent, a court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Kastrati v. M.E.G. Rest. Enterprises Ltd.,* 1:21-CV-00481 (KHP), 2023 WL 180043, at *2 (S.D.N.Y. Jan. 13, 2023). However, a court "need not, and indeed should not, become green-eyeshade accountants. The essential goal ... is to do rough justice, not to achieve auditing perfection." ⚑ *Fox v. Vice,* 563 U.S. 826, 838 (2011)(court may consider its overall sense of the case and may use estimates in calculating and allocating an attorney's time.).

In re Jackson, Slip Copy (2023)

A court may adjust the number of hours to account for items that are "excessive, redundant, or otherwise unnecessary" or for "vagueness, inconsistencies, and other deficiencies in the billing records." *Horror Inc.,* 2022 WL 4473426, at *7 (*citing, Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 172-73 (2d Cir. 1998)). "Courts in this Circuit have levied various across-the-board reductions in the total number of requested hours based on vague entries." *Grano v. Martin,* No. 19-CV-6970, 2021 WL 3500164, at *5 (S.D.N.Y. Aug. 9, 2021)(reducing fees by 10% across the board reduction); *see also, Wei v. Sichuan Pepper, Inc.,* 3:19-CV-00525 (JBA), 2022 WL 385226, at *20 (D. Conn. Jan. 17, 2022), *report and recommendation adopted sub nom. Wei v. Sichuan Pepper,* 3:19-CV-525 (JBA), 2022 WL 382019 (D. Conn. Feb. 7, 2022)(applying a 15% reduction to account for excessive time expended); *Mason Tenders Dist. Couns. Welfare Fund v. LJC Dismantling Corp,* No. 17-CV-4493, 2020 WL 9600111, at *13 (S.D.N.Y. Dec. 14, 2020)(reducing award by 15%).

### *The Division of Fees Between Claims*

"[I]f a plaintiff prevails on a claim that generates a fee award, [s]he may recover for work done on other claims if they were substantially related to the claim on which [s]he prevailed." *Stanczyk v. City of New York,* 990 F. Supp. 2d 242, 251 (E.D.N.Y. 2013), *aff'd,* 752 F.3d 273 (2d Cir. 2014); see *also, Saleh v. Pretty Girl, Inc.,* 09-CV-1769 (RER), 2022 WL 4078150, at *30 (E.D.N.Y. Sept. 6, 2022)("because his state-law claims were based on the same events giving rise to [his] federal claims," and because his counsel's time is not easily divisible on a claim-by-claim basis, the Court considers his attorneys' contributions to the litigation as a whole."); *Crews v. County of Nassau,* 06-CV-2610(JFB)(GRB), 2019 WL 6894469, at *6 (E.D.N.Y. Dec. 18, 2019)("plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof.").

### *DISCUSSION*

### *Determining a Reasonable Hourly Rate*

The hourly rate of $750 is not reasonable here, although that rate and higher rates have been allowed in complex bankruptcy cases in this District. The Second Circuit directs me to evaluate reasonable hourly rates for a case of this type based upon prevailing rates in the District of Connecticut. *See, Simmons v. NYC Transit Auth.,* 575 F.3d 170. Since the Plaintiff has not offered a persuasive basis to apply out-of-district rates, I will consider rates charged by counsel of similar expertise in Connecticut. The only evidence provided by the parties of the prevailing rates in Connecticut is Attorney Markus's affidavit attesting he charges a rate of $425 per hour. Beyond just this evidence, I am aware of, and can consider, the range of hourly rates awarded in similar cases in this District. *See, Bonnie Mangan, Chapter 7 Trustee v. Wells Fargo Bank, N.A. D/B/A Wells Fargo Card Services,* Case No. 21-3006 (AMN), Order Imposing Sanctions, ECF No. 64 (concluding $400 per hour reasonable for Attorney Tara Trifon, partner at Locke Lord); *In re Simone,* 18-21993 (JJT), 2022 WL 1923278, at *2 (Bankr. D. Conn. June 3, 2022)(finding hourly rate of $565 reasonable for Attorney Irve Goldman, chair of the bankruptcy, creditors' rights, and financial restructuring practice at Pullman & Comley); *In re Jackson,* 15-21233 (AMN), 2020 WL 718609, at *4 (Bankr. D. Conn. Feb. 12, 2020)(concluding $325 per hour reasonable for Attorney John Cesaroni, then an associate, now currently a partner at Zeisler & Zeisler, P.C.). I am also aware of the hourly rates charged by attorneys in some of the more complex Chapter 11 cases pending recently in this District, including:

**\*6** • $695 per hour for Attorney Patrick Birney, partner at Robinson & Cole, LLP as debtor's counsel in *In re The Norwich Roman Catholic Diocesan Corporation,* Case No. 21-20687 (JTT);

• $450 per hour for Attorney Douglas Skalka, a principal of Neubert, Pepe & Monteith, P.C., as local counsel to the Chapter 11 Trustee in *In re Ho Wan Kwok,* Case No. 22-50073 (JAM);

• $400 per hour for Attorney Jeffrey Sklarz, partner at Green & Sklarz, LLC, as local counsel to debtors in *In re The Rosegarden Health and Rehabilitation Center, LLC,* jointly administered under Case No. 18-30623 (AMN);

• $500 per hour for Attorney James Berman, partner at Zeisler & Zeisler, P.C., as counsel to debtors in *In re Servicom, LLC,* jointly administered under Case No. 18-31722 (AMN).

Based upon the prevailing rates ranging from $400 to $695 per hour in this District, I conclude a reasonable hourly rate for the Bankruptcy Related Claim is $500 per hour. I reach this conclusion after also considering whether any of the *Johnson* factors warrant increasing or decreasing the rate. The claim at issue - the Bankruptcy Related Fee Claim - did not present a novel or particularly difficult question of fact or law. Rather, the claim was more akin to any claim seeking damages stemming from the violation of a court order. The fact that this adversary proceeding included a malpractice component - the [image] IRC § 1398 claim - is insufficient for me to conclude it was sufficiently complex to require a rate higher than those prevailing in this District. Notwithstanding the fact the claim appeared straight-forward, I credit the experience and reputation of Attorneys Ansari and Baratta and how they may be able to command a higher customary hourly rate for litigation within New York. Nonetheless, I conclude $500 per hour is a reasonable rate for a case of this complexity and nature in this District.

### *Calculating a Reasonable Amount of Hours*

Mr. Jackson's counsel expended 525.70 hours in prosecuting this case. Mr. Jackson asserted sixty (60%) percent of the time, or 315.4 hours, should be awarded as reasonable. GSO objected that the percentage is arbitrary and does not align with the focus of the litigation. Mr. Jackson's counsel noted they originally considered the case as having two claims: the "tax claim" (aka the [image] IRC § 1398 Claim) and the "taking money claim" (aka the $90,000 Monthly Claim). His counsel believed it was fair to attribute sixty (60%) percent of their time to the "taking money" claim. I agree sixty (60%) percent appears reasonable. I am unpersuaded awarding the entire sixty (60%) percent is arbitrary or unfairly compensates for time incurred on the unsuccessful $90,000 Monthly Fee Claim, a claim involving similar circumstances as the Bankruptcy Related Fee Claim. Both claims involved a common set of facts and related to the interpretation of the Retention Order. And, the work done regarding the $90,000 Monthly Fee Claim, including time incurred for discovery and depositions, ultimately aided in the assertion of the Bankruptcy Related Fee Claim. I decline to establish a different percentage or apply any downward adjustment to the number of hours expended on that basis.

**\*7** However, I conclude a fifteen (15%) percent across-the-board reduction is warranted due to vague and excessive billing entries. The court's independent assessment of the billing records revealed a number of vague entries lacking in sufficient description for the court to determine their reasonableness. In particular, several time entries starting in July of 2021, simply state "Trial preparation" providing no insight as to Attorney Ansari's actual tasks. Additionally, a reduction is warranted based upon the instances of duplicative billing by Attorneys Ansari and Baratta. The following is a non-exhaustive list of examples of what I view as duplicative billing of tasks not necessitating two attorneys.

- 2/12/2018 - "Office discussion re: hearing continued pursuant to the order granting the motion to amend scheduling order re: complaint filed by Client." Attorney Ansari and Attorney Baratta each billed 0.5 hours for a total of 1 hour to discuss a hearing being continued. AP-ECF No. 389-1, p. 6.

- 3/9/2018 - "Preparation for and attendance at continued Pre-Trial Conference" - Attorney Ansari and Attorney Baratta each billed 5 hours for a total of 10 hours. No Pre-Trial Conference was held on March 9, 2018, a Pre-Trial Conference had been scheduled for March 14, 2018, but was continued on March 21, 2018, by Order dated March 9, 2018. AP-ECF No. 389-1, p. 6.

- 11/27/2019 - "Review of scheduling order regarding the unsuccessful mediation and that a schedule is required for resolution of the complaint ..." The remaining portion of the time entry recites the deadlines in the scheduling order but does not provide any insight as to what tasks counsel engaged in beyond review. Attorney Ansari and Attorney Baratta each billed 1.3 hours for a total of 2.6 hours to review a Scheduling Order. AP-ECF No. 389-1, p. 8-9.

- 7/25/2021 - "Review of scheduling order re: trial dates." Attorney Ansari and Attorney Baratta each billed 0.5 hours for a total of 1 hour. AP-ECF No. 389-1, p. 12. The Scheduling Order discussed in this entry is found at AP-ECF No. 291 and listed continued trial dates after having been provided those dates by counsel.

In light of these excessive and vague entries a fifteen (15%) percent reduction is warranted to reach a reasonable number of hours for this case. After applying the reduction, I conclude 268.1 hours is reasonable for the Bankruptcy Related Fee Claim.

In re Jackson, Slip Copy (2023)

---

### *The Award of Attorney's Fees and Costs*

Having determined the reasonable hourly rate ($500) and the reasonable number of hours (268.1), I conclude Mr. Jackson is entitled to an award of attorney's fees of $134,053.50. Since Mr. Jackson removed costs associated with the ▱IRC § 1398 claim and because GSO failed to raise any specific objection to the costs now sought, I conclude the costs of $4,148.47 are reasonable.

A separate, supplemental judgment respecting only the award of attorney's fees and costs will enter.

Accordingly, it is hereby

ORDERED: Curtis James Jackson, III, is awarded attorney's fees and costs totaling One Hundred and Thirty-Eight Thousand, Two Hundred and One ($138,201.97) Dollars and 97/100 Cents as a part of the Judgment entered in favor of Curtis James Jackson, III, and against GSO Business Management, LLC related to the Bankruptcy Related Fee Claim; and it is further

ORDERED: GSO Business Management, LLC shall pay the awarded attorney's fees and costs to Curtis James Jackson, III, on or before April 15, 2023.

**All Citations**

Slip Copy, 2023 WL 2202738

---

### Footnotes

1    Attorney Ansari and Attorney Baratta each submitted a declaration indicating the attorney's fees and costs sought were based upon the second amended billing statement attached to the declaration. AP-ECF Nos. 389-1, 389-2. Each declaration detailed how the fees and costs being claimed had been reduced from the original statement of attorney's fees, AP-ECF No. 378, to remove fees and costs associated with the expert depositions pertaining to the ▱IRC § 1398 Claim. AP-ECF Nos. 389-1, 389-2.

2    The court notes the $750 per hour rate appears to be a rate chosen by Mr. Jackson's counsel for the purposes of this award, and not the actual rate charged to the client. See, AP-ECF No. 389-1, p. 15 ("the attorney hourly billing rate has been reduced to $750 per hour from standard billing rates as per agreement with Client."). No information was provided as to the amount of attorney's fees actually charged to Mr. Jackson.

3    "Ideally, included in the fee applicant's submissions should be affidavits providing information as to the credentials of each attorney seeking reimbursement and an affidavit by a disinterested local practitioner attesting to the relevant prevailing market rates." *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona,* 188 F. Supp. 3d 333, 338 (S.D.N.Y. 2016).

---

End of Document                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.